PETER GOLDSTEIN, ESQ.
Nevada Bar No. 6992
**PETER GOLDSTEIN LAW CORP**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:     (702) 474-6400
Facsimile:     (888) 400-8799
peter@petergoldsteinlaw.com

JOSEPH J. WIRTH, ESQ.
Nevada Bar No. 10280
ASH MARIE BLACKBURN, ESQ.
Nevada Bar No. 14712
JOSEPH W. GUINDY, ESQ.
Nevada Bar No. 15556
TYLER A. BIXBY, ESQ.
Nevada Bar No. 16679
**BLACKBURN WIRTH, LLP**
6018 S. Fort Apache Road, Ste. 150
Las Vegas, NV 89148-5652
Tel: (702) 472-7000
Fax: (702) 463-4440
ash@blackburnwirth.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA (LAS VEGAS)

| | |
|---|---|
| ROBERT ST. LUCE, as Special Administrator of the ESTATE OF ROBERT PITCHER, Deceased; FRANCA MASTROCOVA, individually; DIANA CAROLINA MARTINEZ MONTOYA, individually;<br><br>Plaintiffs,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; PHILIPPE DINH; KYLE CORSO; OSCAR NUNO-REYNOSO; and DOES  1 -10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Unreasonable Search and Seizure— Excessive Force and Wrongful Death – Fourth Amendment (42 U.S.C. § 1983)**<br>2. **Substantive Due Process- Violation of Fourteenth Amendment – Deprivation Familial Relations (42 U.S.C. §1983)**<br>3. **Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**<br>4. **Municipal Liability – Failure to Train (42 U.S.C. §1983)**<br>5. **Municipal Liability – Ratification (42 U.S.C. §1983)**<br>6. **Battery/Wrongful Death**<br>7. **Negligence-Wrongful Death**<br>8. **Negligent Infliction of Emotional Distress** |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiffs, ROBERT ST. LUCE, as Special Administrator of the ESTATE OF ROBERT PITCHER, FRANCA MASTROCOVA, and DIANA MARTINEZ MONTOYA, by and through their attorneys of record, PETER GOLDSTEIN, ESQ. of PETER GOLDSTEIN LAW CORP, and JOSEPH J. WIRTH, ESQ., ASH MARIE BLACKBURN, ESQ., JOSEPH W. GUINDY, ESQ., and TYLER A. BIXBY, ESQ. of BLACKBURN WIRTH, LLP, hereby complain and allege against Defendants, and each of them, as follows:

**INTRODUCTION**

1. This case involves the officer-involved shooting (OIS) death of ROBERT PITCHER, a fifty-one-year-old man. He died of seventeen gunshot wounds fired by LAS VEGAS POLICE OFFICERS, PHILIPPE DINH, KYLE CORSO, and OSCAR NUNO-REYNOSO.

2. PITCHER'S manner of death was ruled as a homicide by the Clark County Coroner.

3. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal police shooting of the decedent, ROBERT PITCHER.

4. Plaintiffs are Decedent's surviving mother and wife, individually, and his prior stepson, as special administrator of Decedent's estate.

**PARTIES**

5. At all relevant times, ROBERT PITCHER ("DECEDENT" or "PITCHER") was an individual residing in County of Clark, Nevada. See Exhibit "A," redacted Death Certificate for PITCHER, attached hereto and incorporated herein by this reference.

6. DECEDENT is survived by his mother, Plaintiff FRANCA MASTROCOVA, and his wife, Plaintiff DIANA CAROLINA MARTINEZ MONTOYA hereinafter ("MASTROCOVA" and "MONTOYA").

7. At all times herein relevant, MASTROCOVA resided in New York.

8. At all times herein relevant, MONTOYA resided in Nevada with Decedent PITCHER.

9. MASTROCOVA AND MONTOYA sue in their individual capacity as mother and wife of DECEDENT.

10. At all times herein relevant, ST. LUCE resided in Nevada.

11. ST. LUCE sues in a representative capacity as special administrators of DECEDENT'S Estate. *See* Exhibit "B," Order Appointing Special Administrator, attached hereto, and incorporated herein by this reference.

12. Plaintiffs seek both survival and wrongful death damages under federal and state law.

13. At all times herein mentioned, Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT (hereinafter "LVMPD") is and was at all relevant times mentioned herein, a municipality duly organized and existing under the laws of the State of Nevada.

14. At all relevant times, LVMPD was the employer of Defendants, Officers PHILIPPE DINH (hereinafter "DINH"), KYLE CORSO (hereinafter "CORSO"), and OSCAR NUNO-REYNOSO (hereinafter "REYNOSO"), and DOES 1 through 5 ("DOE OFFICERS") who were LVMPD Police Officers, and DOES 6 through 10 ("DOE SUPERVISORS") who were managerial, supervisorial, and policymaking employees of the LVMPD.

15. DINH, CORSO, REYNOSO, and DOE OFFICERS are sued in their individual capacity for damages only.

16. At all times herein mentioned, LVMPD employed, controlled, and operated the LVMPD Police Department ("LVMPD POLICE DEPARTMENT"), its police officers and are liable for the action and/or inactions of its police officers and DOES 6-10.

17. At all relevant times, Defendants DINH, CORSO, REYNOSO, and DOES 1-10 were duly authorized employees and agents of LVMPD, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant LVMPD.

18. At all relevant times, Defendants DINH, CORSO, REYNOSO, and DOES 1-10 were duly appointed officers and/or employees or agents of LVMPD, subject to oversight and supervision by LVMPD's elected and non-elected officials.

19. In doing the acts and failing and omitting to act as hereinafter described, Defendants DINH, CORSO, REYNOSO, and DOES 1-10 were acting with the implied and actual permission and consent of LVMPD.

20. At all times mentioned herein, each and every LVMPD defendant was the agent of each and every other LVMPD defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every LVMPD Defendant.

21. The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.

22. The Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.

23. Each of the fictitiously named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

24. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367 and statutory and Constitutional provisions. The Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

25. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Clark, Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

26. Plaintiffs repeat and reallege each and every allegation hereinabove of this Complaint with the same force and effect as if fully set forth herein.

27. Upon information and belief, on November 25, 2023, at approximately 2:55 a.m. LVMPD were contacted via the 311 system about DECEDENT.  He was reported to be walking in his neighborhood at 3929 Landsdown Place, Las Vegas, NV 89121.

28. DECEDENT's mother, MASTROCOVA, spoke with dispatch for several minutes, informing them that: DECEDENT was acting "wacky" and was "paranoid"; he thought his wife was "undercover" and was "pacing back and forth"; the whole family tried to get him to a mental health clinic, but he wouldn't go, leading to the need for a wellness check; they feared he was going to commit suicide, because they were "missing a knife"; Mr. Pitcher was not known to be diagnosed with mental illness but that DECEDENT had gone "downhill" since a significant motor vehicle accident and after the death of his son.

29. MASTROCOVA did not allege that DECEDENT had committed a crime; rather, she feared he intended to commit suicide.

30. Upon information and belief, a sole LVMPD Officer responded to the call and found DECEDENT standing alone in his neighborhood. He had a kitchen knife in his hand and held it to his neck. The as yet unnamed Officer called for backup.

31. When backup arrived, numerous officers surrounded DECEDENT, who was obviously having a mental crisis, paranoid, and unable to hear and/or comprehend commands.

32. The numerous officers surrounding DECEDENT repeatedly yelled his name with their weapons drawn, while DECEDENT was obviously in crisis, paranoid, and unable to hear and/or comprehend commands.

33. Upon information and belief, DECEDENT began to walk toward LVMPD Officers, who were protected by space and/or objects between them. These officers had time, cover and distance in the surrounded DECEDENT from two different directions.

34. LVMPD Officers shot DECEDENT with eighteen (18) low-lethal rounds, only further aggravating his apparent paranoia and distress.

35. Upon information and belief, an LVMPD Officer deployed a taser, but it did not make contact with DECEDENT.

36. Upon information and belief, Defendants made no effort to peacefully resolve DECEDENT's mental health crisis without aiming their weapons at him.

37. DECEDENT proceeded to walk toward the Officers in apparent distress and clearly unable to hear, comprehend or comply with the Officers' commands.

38. LVMPD Officers were told by his wife, MONTOYA, at the scene that he was previously and significantly injured in a car accident and was having a mental health crisis.

39. Defendants knew or should have known that DECEDENT could not hear or comprehend their commands and was not responsive, because among other things, he was suffering from a mental health crisis.

40. Prior to and upon their arrival, before making contact with PITCHER, Defendants did not preplan before they approached and contacted PITCHER.

41. Officers did not communicate a tactical plan on how to approach PITCHER, they did not discuss the effectiveness of less than lethal options or provide sufficient time to deescalate the situation with other tools at their disposal.

42. At the time of DECEDENT's death, DECEDENT did not pose a threat to any member of the public. DECEDENT was not in a position where he was approaching another residence or other persons who might be potentially exposed to danger. There was no risk that DECEDENT was a threat to anyone other than the officers whose approach was not within policy.

43. Defendants could have kept within sufficient distance from DECEDENT so they were not within the perceived striking range.

44. Upon information and belief, Defendants did not attempt to gather additional resources, use other less lethal weapons, such as a 40 mm ballistic foam launcher, k-9 team, ballistic shields, crisis negotiators, or other tools.

45. This is especially concerning because LVMPD has had numerous instances of shooting persons in crisis or holding sharp edged weapons and failing to come up with a tactical plan to assess and attempt to diffuse the situations without the use of lethal force. LVMPD is also aware that the less lethal shotguns have limited effectiveness in dealing with similar types of crises. DECEDENT had not broken any laws, as suicide is not against the law.

46. Upon information and belief, Defendants did not have probable cause to believe that DECEDENT committed a crime.

47. Upon information and belief, Defendants did not have reasonable suspicion to believe that DECEDENT had committed a crime.

6

48. Upon information and belief, Defendants shot and killed DECEDENT for refusing to understand and comply with their commands within minutes of their initial interaction with DECEDENT and failed to show restraint contrary to the statements of their media representative

49. At the time of the shooting, Defendant DINH was twenty-nine years old and had been an officer with LVMPD for two (2) years.

50. Defendant DINH shot DECEDENT six (6) times.

51. At the time of the shooting, Defendant REYNOSO was twenty-two years old and had been an officer with LVMPD for one (1) year.

52. Defendant REYNOSO shot DECEDENT three (3) times.

53. At the time of the shooting, Defendant CORSO was thirty-four years old and had been an officer with LVMPD for two (2) years.

54. Defendant CORSO  shot DECEDENT eight (8) times which is entirely excessive and shows a purpose to harm in violation of the 14th Amendment to the US Constitution

55. In total, Defendants shot DECEDENT seventeen (17) times.

56. Upon information and belief, Defendants continued shooting DECEDENT after he had already fallen to the ground and/or released the knife.

57. In light of the numerous instances of LVMPD officers shooting persons with sharp edged weapons, they fail to have a policy to require their officers to shoot in clusters and reassess before continuing to shoot.

58. The Coroner identified multiple gunshot wounds to DECEDENT as follows:

i. Gunshot wound of the left anterior axillary line, traveling through the left chest wall and intercostal muscles, with no exit wound;

ii. Gunshot wound of the lateral left chest, traveling through the left chest wall at ribs 5-6, the pericardial sac, left ventricle wall/interventricular septum, right ventricle wall, and right chest wall at ribs 5-6, with no exit wound;

iii. Gunshot wound of the left side of the abdomen, traveling through the omentum, anterior periadrenal fat, transverse colon, mesentery, and small bowel, with no exit wound;

7

iv.    Gunshot wound of the right hip, traveling through the hip muscles, right femur, and pelvis, with no exit wound;

v.    Gunshot wound of the left hip, traveling through the abdominal wall, before exiting from the entrance;

vi.    Gunshot wound of the left torse, passing five (5) centimeters beneath the skin, before exiting;

vii.    Gunshot wound of the left buttock with no exit wound;

viii.    Gunshot wound of the left thigh, traveling through muscle and tendon before exiting anteriorly.

ix.    Gunshot wound of the right thigh, fracturing the distal femur and coming to rest in the right knee;

x.    Gunshot wound of the right thigh without breach of skin;

xi.    Gunshot wound of the right arm, traveling through muscle and soft tissue before exiting anteriorly;

xii.    Gunshot wound of the left forearm, traveling through muscle, ulna and radius, before exiting anteriorly;

xiii.    Gunshot wound of the left hand, traveling through the third proximal phalanx before exiting posteriorly;

xiv.    Gunshot wound of the upper back, traveling through the left side of the spinous processes, fracturing the upper left ribs, passing through the left side of shoulder and fracturing the left clavicle, with no exit wound;

xv.    Gunshot wound of the right upper back, traveling superficially for a distance of 12.5 centimeters beneath the skin;

xvi.    Gunshot wound of the right mid back, traveling through the right chest wall, right lung, liver, hemidiaphragm, with no exit wound;

xvii.    Gunshot wound of the left mid back, traveling through soft tissue external to the chest and abdomen, with no exit wound.

59. Upon information and belief, Defendants did not call for medical personnel, despite DECEDENT'S mental health crisis, until after he was shot seventeen (17) times.

60. Upon information and belief, Defendants failed to immediately render medical assistance.

61. DECEDENT'S death was ruled a homicide.

62. As a result of the foregoing, Plaintiffs suffered intense physical and emotional pain, anguish, distress and despair, and death, including the loss of enjoyment of life and loss of familial relations.

63. DINH, CORSO, REYNOSO, and DOES 1-10, are responsible for the DECEDENT's injuries and death either because they were personally involved or because they were integral participants or because they failed to intervene.

**FIRST CLAIM FOR RELIEF**
**UNREASONABLE SEARCH AND SEIZURE —VIOLATION OF FOURTH AMENDMENT-EXCESSIVE FORCE-WRONGFUL DEATH (42 U.S.C. § 1983)**
**(SPECIAL ADMINISTRATORS AGAINST DINH, CORSO, AND REYNOSO)**

64. Plaintiffs repeat and re-allege each and every allegation of this Complaint as set forth hereinabove with the same force and effect as if fully set forth herein.

65. DECEDENT was not engaged in the commission of a crime.

66. DECEDENT had no arrest warrants outstanding.

67. DECEDENT did not pose a threat to any member of the public.

68. Defendants shot DECEDENT multiple times striking and killing him. The first shot was excessive deadly force and the subsequent shots were unnecessary and gratuitous.

69. The unjustified use of force, including deadly force against DECEDENT by DINH, CORSO, and REYNOSO, including, but not limited to, shooting DECEDENT 17 times, deprived DECEDENT of his right to be secure in his person against unreasonable and deadly force as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. The unreasonable use of force, including deadly force, DINH, CORSO, and REYNOSO, deprived the DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the

9

Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

70. As a result, DECEDENT suffered extreme pain and suffering and suffered a loss of life and earning capacity.

71. The SPECIAL ADMINISTRATORS of DECEDENT's estate claims, *inter alia*, pre-death pain and suffering, punitive damages and funeral and burial expenses for DECEDENT.

72. As a result of their conduct, DINH, CORSO, and REYNOSO, are liable for DECEDENT's injuries, and were both integral participants in the excessive force.

73. This use of deadly force was excessive and unreasonable under the circumstances, as DECEDENT posed no imminent threat of death or serious physical injury to DINH, CORSO, and REYNOSO, Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

74. The conduct of Defendants DINH, CORSO, and REYNOSO, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DINH, CORSO, and REYNOSO.

75. The SPECIAL ADMINISTATOR of DECEDENT's estate also seeks all permissible damages under Nev. Rev. Stat. § 41.100 and the Fourth Amendment to the U.S. Constitution.

76. The SPECIAL ADMINISTRATOR of DECEDENT's estate also seeks attorney's fees and costs under this claim.

**SECOND CLAIM FOR RELIEF**
**SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983)**
**VIOLATION OF FOURTEENTH AMENDMENT –**
**DEPRIVATION OF FAMILIAL RELATIONS**
**(ALL PLAINTIFFS v. DINH, CORSO, REYNOSO, and DOES 1-10)**

77. Plaintiffs repeat and re-allege each and every allegation of this Complaint hereinabove with the same force and effect as if fully set forth herein.

78. DECEDENT's surviving relatives, MASTROCOVA and MONTOYA, individually, have a cognizable interest under the United States Constitution to be free from state actions that

deprive of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with their son and husband, DECEDENT.

79.    DECEDENT had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

80.    As a result of the excessive force by DINH, CORSO, and REYNOSO, and failure of said other Defendants to intervene, PITCHER died.  The individual PLAINTIFF's were thereby deprived of their constitutional right of a familial relationship with DECEDENT.

81.    Defendants DINH, CORSO, and REYNOSO, were acting under color of state law, thus violated the Fourteenth Amendment rights of individual Plaintiffs to be free from unwarranted interference with their familial relationship.

82.    The aforementioned actions of and DINH, CORSO, REYNOSO, and DOES 1-10, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and/or individual Plaintiffs and with the purpose to harm unrelated to any legitimate law enforcement objective.

83.    Defendants DINH, CORSO, REYNOSO, and DOES 1-10, acting under color of state law, thus violated the Fourth, and Fourteenth Amendment rights of DECEDENT and/or individual Plaintiffs.

84.    As a direct and proximate cause of the acts of DINH, CORSO, REYNOSO, and DOES 1-10, DECEDENT experienced severe pain and suffering and lost his life and earning capacity.  Plaintiffs, in their individual capacity suffered extreme and severe mental anguish and pain and have been injured in mind and body.

85.    Plaintiffs MASTROCOVA and MONTOYA, individually, have also been deprived of the life-long love, companionship, comfort, emotional support, society, care, and sustenance of the DECEDENT, and will continue to be so deprived for the remainder of their natural lives.  The individual Plaintiffs seeks all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of emotional support, companionship, society,

11

comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages.

86. Defendants DINH, CORSO, REYNOSO, and DOES 1-10 are liable for DECEDENT's and individual Plaintiffs' injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

87. The conduct of Defendants DINH, CORSO, REYNOSO, and DOES 1-10 were willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and/or individual Plaintiffs and therefore warrant the imposition of exemplary and punitive damages as to DINH, CORSO, REYNOSO, and DOES 1-10.

88. The SPECIAL ADMINISTATOR of DECEDENT's estate also seeks all permissible damages under Nev. Rev. Stat. § 41.100.

89. The SPECIAL ADMINISTRATOR of DECEDENT's estate also claims funeral and burial expenses.

90. The SPECIAL ADMINISTRATOR of DECEDENT's estate also seeks attorney's fees and costs under this claim.

91. Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

**THIRD CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM OR POLICY**
**(42 U.S.C. § 1983)**
**(ALL PLAINTIFFS v. LVMPD and DOES 6-10)**

92. Plaintiffs repeat and re-allege each and every allegation of this Complaint as set forth hereinabove with the same force and effect as if fully set forth herein.

93. On and for some time prior November 25, 2023 (and continuing to the present date), Defendants LVMPD, and DOES 1-10, deprived Plaintiffs and DECEDENT of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and DECEDENT, and of persons in

their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including, DINH, CORSO, REYNOSO, and DOES 1-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written LVMPD's policies, including the use of excessive and deadly force;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining LVMPD officers, and other personnel, including DINH, CORSO, REYNOSO, and DOES 1-10, whom Defendant LVMPD knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force, including deadly force;

(c) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants DINH, CORSO, REYNOSO, and DOES 1-5, who are and/or were Police officers of LVMPD;

(d) By failing to discipline, DINH, CORSO, REYNOSO, and DOES 1-5, the LVMPD Police officers' conduct, including but not limited to, gross violations of policy, failing to communicate, failing to create and execute a tactical plan and improper use of excessive force;

(e) By ratifying the intentional misconduct of Defendants, DINH, CORSO, REYNOSO, and DOES 1-5, police officers involved in shooting and killing innocent persons without immediate defense of life or probable cause to believe they were in immediate defense of life;

(f) By having and maintaining an unconstitutional policy, custom, and practice of detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of DOES 6-10 were done with deliberate indifference to individuals' safety and rights;

(g) By failing to properly investigate claims of unlawful detention and excessive force by LVMPD Police officers; failing to investigate beyond DINH, CORSO, and REYNOSO's account of events;

(h) By failing to institute appropriate policies regarding constitutional procedures and practices for use of force, including the use of less than lethal force;

(i) By failing to train officers regarding Fourth Amendment rights of citizens;

(j) By failing to train officers on the proper use of deadly force;

(k) By using excessive force against persons and condoning the use of excessive force, and conspiring to cover-up civil rights violations;

13

(l)    By inadequate training of its officers and other LVMPD employees, including DINH, CORSO, REYNOSO, and DOES 1-5, on the aforementioned issues, including use of deadly force;

(m)    By failing to conduct a prompt and thorough investigation into the conduct of Defendants DINH, CORSO, REYNOSO, and DOES 1-5;

(n)    By failing to train officers on how to assess the need for deadly force, including shooting suspects multiple times without reassessing the need for additional shots, which is particularly concerning regarding defendant CORSO, who had no legitimate reason to fire 8 shots which show a psychological propensity completely contrary to reasonable police officers training for restraint and requiring justification for firing each shot.

(o)    By condoning the use of deadly force by an officer standing up against an unarmed individual who is not a threat;

(p)    By failing to employ and utilize Crisis Intervention Training when interacting with persons who have apparent mental health impairments.

(q)    Failing to train their officers not to fire when subjects were already on the ground which frequently occurs in OIS cases.

94.    By reason of the aforementioned policies and practices of LVMPD, and DOES 6-10, DECEDENT was severely injured and subjected to intense pain and suffering and loss of life.

95.    Defendants DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through their actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

96.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts of all Defendants, LVMPD, and DOES 6-10, acted with an intentional, reckless, and callous disregard for the life of DECEDENT, and DECEDENT and Plaintiffs' constitutional rights. Defendants LVMPD, and DOES 6-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

14

97. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by all Defendants, were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

98. By reason of the aforementioned acts and omissions of all Defendants, the Plaintiffs were caused to incur funeral and related burial expenses.

99. By reason of the aforementioned acts and omissions of all Defendants, Plaintiffs MASTROCOVA and MONTOYA, in their individual capacity as surviving parents of DECEDENT, have suffered loss of love, companionship, affection, comfort, care, and society and are entitled to damages. The individual Plaintiffs also seek all permissible damages under Nev. Rev. Stat. §41.085, and The Fourth Amendment to the U.S. Constitution including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT and penalties, including, but not limited to, exemplary and punitive damages.

100. Accordingly, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

101. Plaintiffs seek both wrongful death and survival damages under this claim.

102. Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

103. Plaintiffs seek punitive damages against individual supervisory police officer Defendants.

## FOURTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY – FAILURE TO TRAIN (42 U.S.C. § 1983)
### (AGAINST DEFENDANTS LVMPD AND DOES 6-10)

104. Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

105. While acting under the color of state law and within the course and scope of their employment as police officers for LVMPD, DINH, CORSO, and REYNOSO'S unlawful use of excessive force killed DECEDENT, who was suffering a mental health crisis, deprived DECEDENT

15

of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including the right to be free from unreasonable search and seizure and excessive force.

106.   The training policies of the Defendant LVMPD were not adequate to train its police officers, including, but not limited to, DINH, CORSO, REYNOSO, and DOES 1-10, with regard to using deadly force, particularly during a mental health crisis.  As a result, LVMPD police officers, including Defendants DINH, CORSO, REYNOSO, and DOES 1-5, are not able to handle the usual and recurring situations with which they must deal, such as confronting individuals with suspected mental illness, properly giving commands and warnings prior to shooting and using deadly force. These inadequate training policies existed prior to the date of this incident and continue to this day, including, but not limited to:

(a)   Failure to train officers on what constitutes a serious crime which DECEDENT did not commit;

(b)   Failure to train officers on whether or not a suspect posed  an immediate threat to officers and/or to de-escalate situations so as to prevent OIS;

(c)   Failure to train officers about what constitutes active resistance to arrest, what consitiues probable cause for arrest; what constitutes totality of circumstances for use of force;

(d)   Failure to train officers on the reasonableness of a particular use of force based on the perspective of a reasonable officer at the scene rather than with 20/20 vision of hindsight;

(e)   Failure to train officers on the calculus of reasonableness which embodied an allowance for the fact of split-second judgment about the amount of force that is necessary for the particular situation involving DECEDENT;

(f)   Failure to train officers on what actions are "objectively reasonable" in light of the facts confronting them, without regard to their underlying intent or motivation;

(g)   Failure to train regarding providing warnings before shooting and not shooting because somone takes one more step towards them;

(h)   Failure to train regarding what actions constitute threats of deadly force and violation of the Fourth Amendment;

(i)   Failure to properyl train officers who confront mentally  impaired persons which LVMPD officers commonly confront and commonly use excessive force on;

16

      (j)      Failing to train on creating and executing tactical plans, methods of approach, the need for communication, the need to turn on body camera immediately, and the need to coordinate with other officers and utlilize a chain of command

107.     The Defendants LVMPD and DOES 6 through 10 were deliberately indifferent to the known or obvious consequences of its failure to train and/or supervise its police officers, including DINH, CORSO, REYNOSO, and DOES 1-5, adequately with regard to critical situations.  This inadequate training includes failing to teach officers to restrain from the use of excessive force upon confronting a non-threatening person and training when suspects confronted appear unable or unwilling  to obey and how to de-escalate.

108.     Defendant LVMPD has numerous officer-involved shootings annually.  Many of these shootings involve individuals who were suffering from mental illness.  LVMPD was aware that there was and is a reoccurring problem with their officer's use of deadly force.   In other words, LVMPD was aware that there was a problem involving numerous officer-involved shootings of individuals, which could have been avoided had the officers employed well-known and accepted police tactics and techniques and to avoid having to unnecessarily using excessive and deadly force against these individuals who keep getting shot by LVMPD police officers, and shot multiple times when only one shot is sufficient to neutralize any threat.

109.     At all times mentioned herein, LVMPD and DOES 6 through 10 were aware that failure to implement adequate training with regards to their officers would result in LVMPD continuing to have numerous unreasonable officer-involved shootings of individuals.

110.     The training that LVMPD police officers, including Defendants, DINH, CORSO, REYNOSO, and DOES 1-10, should have received with regard to the use of deadly force against individuals includes training that officers should have knowledge of when to use or not to utilize deadly force, to warn and to use less than lethal force when available.

111.     On information and belief, the training provided to LVMPD police officers, including, Defendants DINH, CORSO, REYNOSO, and DOES 1-10, with regard to using deadly force against individuals, did not include training that officers should avoid discharging their firearms when confronting citizens wihout reasonable fear of death or great bodily injury.

17

112. The training that LVMPD police officers, including DINH, CORSO, REYNOSO, and DOES 1-10 received with regards to using deadly force against individuals was inadequate because it has continuously resulted in numerous unreasonable uses of deadly force by LVMPD police officers against individuals annually (going back at least five (5) years). Further, the training that LVMPD police officers, including DINH, CORSO, REYNOSO, and DOES 1-10, received with regard to using deadly force against individuals was inadequate because it failed to implement well-known and accepted police tactics and techniques for dealing with individuals without having to use deadly force against them. These well-known and accepted police practices and techniques are routinely used to train law enforcement from other agencies, such as the Los Angeles Police Department, the Los Angeles County Sheriff's Department, and the California Highway Patrol. Further, most police officers properly train their officers in crisis intervention.

113. The failure of the Defendant LVMPD, DOES 6-10, to provide adequate training with regard to when to use or not use deadly force, caused the deprivation of the DECEDENT's constitutional rights by Defendants DINH, CORSO, REYNOSO, and DOES 1-5. In other words, the Defendants' failure to train is so closely related to the deprivation of the DECEDENT's rights to be the moving force that caused the ultimate injury.

114. By failing to provide adequate training to LVMPD's police officers, including Defendants DINH, CORSO, REYNOSO, and DOES 1-10, Defendants acted with an intentional, reckless, and callous disregard for the life of DECEDENT and DECEDENT's constitutional rights. All Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

115. By reason of the aforementioned acts and omissions of LVMPD, DINH, CORSO, REYNOSO, and DOES 1-10, PLAINTIFF's were caused to incur medical expenses, incur funeral and related burial expenses, and loss of financial support.

116. By reason of the aforementioned acts and omissions of Defendants and DOES 1-10, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

117. Accordingly, Defendants and DOES 6-10, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

118. The indvidiual Plaintiff's seek all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages against individual defendants.

119. Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

**FIFTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY— RATIFICATION (42 U.S.C. § 1983)**
**(ALL PLAINTIFFS v. LVMPD AND DOES 6-10)**

120. Plaintiffs repeat and reallege each and every allegation as set forth hereinabove of this Complaint with the same force and effect as if fully set forth herein.

121. Defendants DINH, CORSO, REYNOSO, and DOES 1-10 acted under the color of law when they shot DECEDENT.

122. The acts and/or failure to act of Defendants LVMPD and DOES 6-10 deprived Plaintiffs of their particular rights under the United States Constitution.

123. DOES 6-10 acted under the color of state law.

124. DOES 6-10 acted or purported to act in the performance of official duties under state, county, or municipal law, ordinance, or regulation.

125. DOES 6-10 had final policymaking authority from Defendant LVMPD concerning the acts and/or failure to act of Defendants DINH, CORSO, REYNOSO, and DOES 1-10.

126. LVMPD and DOES 6-10 ratified the actions and failure to act of DINH, CORSO, REYNOSO, and DOES 1-5, including their shooting of DECEDENT. That is, DOES 6-10, including supervisors, knew of and specifically made a deliberate choice to approve DINH, CORSO, REYNOSO, and DOES 1-10 acts or inactions and the basis for it.

127. Upon information and belief, Defendants DINH, CORSO, REYNOSO, LVMPD, and DOES 1-5 knew that DECEDENT posed no threat of a clear and present danger of death or serious bodily injury to himself or others.

128. Defendants DOES 6-10 ratification of the acts and/or omissions of DINH, CORSO, REYNOSO, and DOES 1-5, include, but are not limited to:

(a) Defendants DINH, CORSO, REYNOSO, and Does 1-5 are still employed with LVMPD;

(b) DOES 6-10 failed to conduct a prompt and thorough investigation of the events involving DECEDENT's death and the conduct of DINH, CORSO, REYNOSO and DOES 1-5;

(c) Defendants failed to conduct and complete a prompt and thorough investigation into the actions and/or inactions of DINH, CORSO, REYNOSO, and DOES 1-5, in connection with DECEDENT's death;

(d) Defendant LVMPD, upon information and belief, did not do anything or take any action with respect to DECEDENT's death, resulting in de facto ratification;

(e) Defendant LVMPD allowed the use of excessive force;

(f) Failure to follow proper protocol in investigating this OIS shooting and conducting thorough, unbiased interviews;

(g) Failed to discipline and or retrain DINH, CORSO, REYNOSO and DOES 1 THROUGH 10.

(h) Failing to have the newly hired officers assessed for pyschological stability and fitness.

129. Upon information and belief, Defendant LVMPD approved of the officers' actions other than the failure to create a tactical plan and the failure to communicate.

130. The individual Plaintiffs seeks all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages.

131. Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

## SIXTH CLAIM FOR RELIEF
### BATTERY – WRONGFUL DEATH (Nevada State Law Claim)
### (Special Administrators v. ALL DEFENDANTS)

132.   Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

133.   Defendants DINH, CORSO, REYNOSO and DOES 1-5, while working as Police officers for LVMPD, and acting within the course and scope of their duties, used unreasonable force when they intentionally shot DECEDENT.

134.   In particular, Defendants DINH, CORSO, REYNOSO intentionally shot DECEDENT multiple times, at close range, and used unwarranted excessive and deadly force. DECEDENT did not consent to be shot multiple times.

135.   As a result of the actions of Defendants, DINH, CORSO, REYNOSO and DOES 1-5, DECEDENT suffered severe pain and suffering and ultimately died from his injuries and lost earning capacity.  Defendants, DINH, CORSO, REYNOSO and DOES 1-5 had no legal justification for using said force, including deadly force, against DECEDENT and said Defendants, DINH, CORSO, REYNOSO and DOES 1-5, the exercise of force while carrying out their official duties was an unreasonable use of deadly force.

136.   As a direct and proximate result of the Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body.  Plaintiffs MASTRACOVA and MONTAYA as Special Administrators have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.  Plaintiffs also are claiming funeral and burial expenses.

137.   Defendants LVMPD is vicariously liable for the wrongful acts of Defendants DINH, CORSO, REYNOSO and DOES 1-5 because they were acting under color of law and within the course and scope of their employment as police officers for LVMPD.

138.   The conduct of Defendants DINH, CORSO, REYNOSO and DOES 1-5 were malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages.

21

139.   PLAINTIFFS seek all permissible wrongful death damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages.

140.   Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENCE – WRONGFUL DEATH (Nevada State Law Claim)**
**(ALL PLAINTIFFS v. ALL DEFENDANTS)**

141.   Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

142.   The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

(a)   The failure to properly and adequately assess the need to use deadly force against DECEDENT;

(b)   The negligent tactics and handling of the situation with DECEDENT, including the excessive shooting of DECEDENT and pre-shooting negligence and the failure to allow DECEDENT time to comply with their commands, Defendants DINH, CORSO, REYNOSO and DOES 1-5 intentions to shoot;

(c)   The negligent detention and use of deadly force against DECEDENT;

(d)   The negligent use of deadly force, including the negligent use of handguns;

(e)   The failure to provide prompt medical care to DECEDENT;

(f)   The failure to properly train and supervise employees, both professional and non-professional, including Defendants DINH, CORSO, REYNOSO and DOES 1-5;

(g)   The failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

(h)   The negligent handling of evidence and witnesses;

(i)   The negligent investigation into the conduct of Defendants DINH, CORSO, REYNOSO and DOES 1-5 and the events relating to DECEDENT's death and/or failure of LVMPD to conduct a prompt and thorough investigation into the actions/inactions of Defendants DINH, CORSO, REYNOSO and DOES 1-5;

(j)   Violating LVMPD's policy regarding the use of deadly force;

22

(j)     Shooting DECEDENT at close range while DECEDENT was non-threatening or did not point a weapon at Defendants DINH, CORSO, REYNOSO and DOES 1-5; and

(k)     For failing to give adequate verbal warnings and commands, and not providing DECEDENT an opportunity to comply.

(l)     Shooting at subjects who no longer pose a threat.

143.    As a direct and proximate result of the Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died and lost earning capacity.

144.    As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs, including MASTRACOVA and MONTOYA, have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT and will continue to be so deprived for the remainder of their natural lives.

145.    The SPECIAL ADMINISTRATOR of DECEDENT's estate are also claiming, *inter alia*, funeral, and burial expenses.

146.    LVMPD is vicariously liable for the wrongful acts of Defendants DINH, CORSO, REYNOSO, and DOES 1-5 because they acted under the color of law and within the course and scope of their employment as police officers for the LVMPD.

147.    Upon information and belief, the negligent acts of Defendants DINH, CORSO, REYNOSO and DOES 1-5, which resulted in bodily harm, including death to DECEDENT were vicariously condoned by LVMPD.

148.    The individual Plaintiff's seeks all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages.

149.    Plaintiffs also seek statutory attorney fees and costs under this claim.

23

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, ROBERT ST. LUCE, as Special Administrator of the ESTATE OF ROBERT PITCHER, FRANCA MASTROCOVA and DIANA MARTINEZ MONTOYA, individually, through their attorneys, request entry of judgment in their favor and against Defendants as follows:

A.   For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in an amount to be proven at trial;

B.   For general and hedonic damages;

C.   For funeral and burial expenses;

D.   For medical billing and expenses;

E.   For punitive damages against DINH, CORSO, REYNOSO and DOES 1-10 in an amount to be proven at trial;

F.   For interest;

G.   For reasonable costs of this action, court costs, and attorneys' fees; and

H.   For such other and further relief as the Court may deem just, proper, and appropriate.

DATED this 13th day of August, 2024.

**BLACKBURN WIRTH, LLP**

*/s/ Ash Marie Blackburn*

_____
ASH MARIE BLACKBURN, ESQ.
Nevada Bar No. 14712
6018 S. Fort Apache Road, Ste. 150
Las Vegas, NV 89148-5652
*Attorney for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED this 13th day of August, 2024.

**BLACKBURN WIRTH, LLP**

*/s/ Ash Marie Blackburn*

_____

ASH MARIE BLACKBURN, ESQ.
Nevada Bar No. 14712
6018 S. Fort Apache Road, Ste. 150
Las Vegas, NV 89148-5652
*Attorney for Plaintiffs*

25